FILED

98 APR 10 PM 1:27

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC., }<br>}<br>}<br>Plaintiff }<br>}<br>vs. }<br>}<br>JIM LIMBAUGH CHEVROLET, INC., }<br>ROY HOWARD, JEANETTA M. LEE }<br>and JIMMY D. LEE, }<br>}<br>Defendants | CIVIL ACTION NO.<br><br>CV-97-AR-2452-S |

ENTERED

APR 10 1998

## MEMORANDUM OPINION

Presently before the court for reconsideration pursuant to this court's order of April 7, 1998, is a motion for summary judgment filed by the plaintiff, General Agents Insurance Company of America, Inc. ("Gainsco"), which seeks a declaration that it has no duty to defend or to indemnify against claims asserted in a state court action brought by defendants, Jeanetta M. Lee and Jimmy D. Lee ("Lees"), against the insured defendants, Jim Limbaugh Chevrolet, Inc. ("Limbaugh") and Limbaugh employee, Roy Howard.  This court's jurisdiction is properly based on diversity of citizenship.  For the reasons stated below, the court determines that Gainsco's motion should be granted in part and denied in part.

### I. FACTS

The Lees are consumers who entered into a contract for the

purchase of a Toyota Camry from Limbaugh. That transaction involved the trade-in of the Lee's old vehicle. The Lees are suing Limbaugh, in state court, for breach of contract, fraud and conversion.

Limbaugh claims that it sold the vehicle to the Lees after receiving initial credit approval through a financing company, Sun Star Acceptance Corporation ("Sun"). However, after discovering that one of the Lees was involved in a pending bankruptcy proceeding, Sun refused to extend a loan to the Lees. Limbaugh claims it made every effort to obtain alternative financing. When no financing became available, Limbaugh claims that the Lees voluntarily returned the Camry. However, Limbaugh had already sold the trade-in to another automobile dealer, who had subsequently performed $500 worth of repairs on the vehicle. Consequently, Limbaugh claims it was forced to pay approximately $500 more for the trade-in than it had received from the other dealer. Rather than return the $400 that the Lees used as a down payment for the Toyota, Limbaugh claims that the parties agreed the Lees would take the trade-in as an off-set for the additional $500 Limbaugh paid to recover the vehicle. The Lees have not responded to Gainsco's motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c).

2

### III. "BODILY INJURY" & "PROPERTY DAMAGE"

Gainsco's policy provides coverage for "bodily injury" or "property damage" caused by an accident. (Pl.'s Ex. A, Garage Coverage Policy ("Policy") Section II(A) at 2.) Because the Lees have failed to assert damages for bodily injury, Limbaugh can only obtain coverage if the Lees' complaint contains claims for "property damage," which the contract defines as "damage to or loss of use of tangible property." (See Pl.'s Ex. B, Lee Complaint at 2; Pl.'s Ex. A, Policy Section VI(K) at 14.) The Lees have alleged conversion, fraud, and breach of contract in connection with Limbaugh's possession of the Camry, as well as Limbaugh's retention of the Lee's $400 deposit and $75 insurance payment.

Gainsco correctly contends that the claims associated with the $400 and $75 cash payments do not constitute claims for "property damage," as defined in its contract. Gainsco's policy limits "property damage" coverage to "tangible" property. (Pl.'s Ex. A, Policy Section VI(K) at 14.) The Alabama Supreme Court has held that "economic losses" do not constitute damage to "tangible" property.[1] *American States Ins. Co. v. Martin*, 662 So. 2d 245, 248 - 49 (Ala. 1995). Therefore, Gainsco has no duty to defend or to indemnify against any claims related to the allegedly misappropriated cash payments.[2]

---

[1] The parties do not dispute that Alabama substantive law applies to the current dispute.

[2] Gainsco also claims that the cash conversion claims are not actionable under Alabama law, which limits such conversion claims to "specific money capable of identification." *Willingham v. United Ins. Co. of America*, 628 So.

3

### IV. THE "ACCIDENT" PROVISION

Gainsco argues that the alleged conversion and fraud are not "accidents" and therefore coverage is not available under the policy which limits liability to "bodily injury" or "property damage," resulting from an "accident." (*See* Pl.'s Ex. A , Policy Section II(A) at 2.) However, the policy does not define the term "accident." Instead, it provides that an "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" (Pl.'s Ex. A, Policy Section VI(A) at 13.) Given the vagueness of this definition, Gainsco refers the court to an Alabama Supreme Court decision which defines the term accident as "an <u>occurrence</u> that is not to be expected or anticipated in the light of common experience and of the existing circumstances." *Howard v. Southern Life & Health Ins. Co.*, 474 So. 2d 1109, 1112 (Ala. 1985) (citations omitted & emphasis supplied). Gainsco asserts that the Alabama Supreme Court definition of accident does not encompass intentional acts. Because conversion and fraud are traditionally intentional tort claims, argues Gainsco, such claims are not covered under its policy which limits coverage to accidents.

Gainsco's argument is unpersuasive. There is no evidence that the "accident" clause in its contract excludes coverage for intentional conduct. Moreover, the Alabama Supreme Court

---

2d 328, 333 (Ala. 1993). While this argument is persuasive, Gainsco makes this argument to the wrong court. "This court's role, in determining insurance coverage, is solely to decide whether the claim brought against the insured includes covered conduct...." *Allstate Indemnity Co. v. Lewis*, 985 F. Supp. 1341, 1348 (M.D. Ala. 1997).

4

definition, upon which Gainsco relies, fails to exclude intentional conduct from the definition of an "accident." Indeed, that definition focuses upon the unexpected nature of the <u>result</u> or "<u>occurrence</u>" which may develop from the insured's conduct. However, an unexpected result or "occurrence" can arise from the insured's intentional or unintentional conduct. Given these two possibilities and the vagueness of Gainsco's contract, the term "accident" is ambiguous. Therefore, under Alabama law, this court must construe the ambiguous provision liberally in favor of the insured. *Altiere v. Blue Cross & Blue Shield of Ala.*, 551 So. 2d 290, 292 (Ala. 1989). Accordingly, Gainsco is not entitled to summary judgment on its argument that the Lee's conversion and fraud claims do not allege facts that would constitute an accident as defined in the insurance policy.

### V. "INTENTIONAL ACT" & "EXPECTED OR INTENDED INJURY" PROVISIONS

Gainsco next contends that its intentional act provision excludes coverage for intentional conduct:

> Expected or Intended Injury Exclusion: "Bodily injury" or "property damage" arising from an intentional act <u>whether or not the resultant "bodily injury" or "property damage" was intended or expected</u> from the standpoint of the "insured."

(Pl.'s Ex. A, Changes in the Garage Coverage Form ("Changes") Section B(1) at 1 (emphasis supplied)). This provision replaces Gainsco's prior "expected or intended" provision which excluded coverage for:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

5

(Pl.'s Ex. A, Policy Section II(B)(1) at 4.) Unlike the former provision, the current provision does not exclude coverage based solely upon whether the insured expected or intended the resulting injury or damage. Therefore, this court can analyze the present clause without reference to the insured's intent, argues Gainsco.

Interpreting Alabama law, the Eleventh Circuit has held that a subjective analysis is inappropriate where an insurance provision "unambiguously excludes from coverage all intentional acts giving rise to liability regardless of whether the insured subjectively intended the resulting damages or injuries." *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 604, n.12 (11th Cir. 1993). Under such circumstances, the court determines the insurer's obligations under the contract by examining the third-party complaint for causes of action asserting intentional conduct. See *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So. 2d 247, 249 (Ala. 1994). Consequently, an unambiguous intentional act provision would necessarily exclude coverage for any causes of action asserting intentional conduct.

Gainsco has no legal obligations to Limbaugh insofar as the Lees assert claims for conversion, which is an intentional tort.

6

Presumably a conversion claim can only proceed under an intentional tort theory, unlike an assault claim which the Alabama Supreme Court recognizes as both an intentional and negligent cause of action, even in the face of wide-spread agreement that assault is an intentional tort.  See *Allstate Indemnity*, 985 F. Supp. at 1348.

Limbaugh counters by arguing that it did not engage in intentional conduct.  (*See* Defs.' Ex. B (Doc. 14)).  Instead, Limbaugh asserts that the Lees voluntarily returned the Camry.  However, such allegations only create factual disputes that must be resolved at trial.  Limbaugh's "'denial[s] in no way change[] the nature of the claim made by the plaintiffs.'" *See Burnham Shoes, Inc. v. WestAmerican Ins. Co.*, 504 So. 2d 238, 240 (Ala. 1987) (emphasis supplied) (citations omitted).  Because conversion is an intentional tort and because the contract's intentional act provision excludes coverage for such claims, Gainsco is under no duty to defend or indemnify against the conversion claims.

However, Gainsco cannot escape its duty to defend Limbaugh against the Lee's fraud claim.  To obtain a declaratory judgment on an exclusionary clause, Gainsco must point to "allegations of the complaint or other available evidence by which the claim [is]

7

clearly excludable." *Universal Underwriter*, 990 F.2d at 605 (emphasis supplied & citation to Alabama case omitted). If Gainsco cannot do so, it "bears a duty to defend even if subsequent developments indicate circumstances that would render the claim excludable." *Id.* at 605 - 6. Alabama has long recognized that the "the insurer's duty to defend is more extensive that its duty to pay." *Burnham Shoes*, 504 So. 2d at 239 (citations omitted).

Gainsco has failed to point to allegations in the complaint or other evidence which would show that the fraud claim is clearly excludable. The Lees do not assert that Limbaugh intentionally committed fraud. Instead, they assert that Limbaugh misrepresented facts in its dealings with the Lees. (Pl.'s Ex. B at ¶9.). Because the Lees can proceed under either an intentional or unintentional fraud theory, *see* Ala. Code § 6-5-101 (1975) (recognizing a cause of action for innocent fraud), the intentional act exclusion does not eliminate Gainsco's obligation to defend against the fraud claim. *See Townsend Ford, Inc. v. Auto-Owners Ins. Co.*, 656 So. 2d 360, 363 - 4 (Ala. 1995). On the other hand, consistent with the intentional act exclusion, Gainsco will have no duty to indemnify Limbaugh should the Lee's obtain a judgment for intentional fraud. Gainsco will no doubt request special jury interrogatories in order to obtain

8

a determination of the category into which the fraud falls, if there was fraud.

## VI. BREACH OF CONTRACT CLAIMS

Gainsco contends that its "contractual" provision "clearly" excludes coverage for the Lee's breach of contract claim because Limbaugh would have no liability "in the absence of the contract or agreement." (Pl.'s Br. at 9.). However, Gainsco fails to direct this court to any documentary evidence and/or any pinpoint citations to legal authority which would support its contention. After reviewing the exclusions section of the Gainsco policy, this court discovered the provision upon which Gainsco presumably relies:

> This <u>insurance does not</u> apply to any of the following....Liability assumed under any contract or agreement. <u>But this exclusion does not apply</u> to liability for damages....That the "insured" would have in the absence of the contract or agreement.

(Pl.'s Ex. A, Policy Section II(B) at 4 (emphasis supplied).)

Gainsco improperly directs this court to the "in the absence of the contract" provision, found at the end of the exclusion, rather than the initial provision which determines when the exclusion is applicable: "Liability <u>assumed</u> under any contract." Interpreting a similar provision, the Alabama Supreme Court held

9

that "that this type of provision 'traditionally serve[s] to exclude 'indemnity types of liability, <u>whereby the liability itself was assumed</u>, rather than [breach of contract] situations....' Insurers can plainly provide in their policies that coverage for breach of [contract] claims is excluded if they so choose." *Towsend,* 656 So. 2d at 364 - 5 (interpreting a provision excluding damages "assumed in a contract or agreement.")(quoting the lower court opinion). Therefore, without evidence that Limbaugh specifically "assumed" liability for breach in its contract with the Lees, rather than simply becoming subject to possible liability as a matter of law, the contractual exclusion is inapplicable.

### VII.   LIABILITY FOR PUNITIVE DAMAGES

Finally, Gainsco correctly asserts that its policy excludes coverage for punitive damages:

> The following EXCLUSIONS are added...Punitive or exemplary damages....If a "suit" is brought against any "insured" for a claim falling within the coverages provided in this policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action. We shall not have any obligation to pay for any cost, interest, supplementary payments, or damages attributable to punitive or exemplary damages.

(Pl.'s Ex. A. Changes Section C at 1.). Accordingly, Gainsco is under no duty to indemnify Limbaugh should the Lee's obtain a judgment for punitive damages. Again, special jury

10

interrogatories will be a necessity.

### VII. CONCLUSION

Because no material issues of genuine fact exist surrounding the following claims, Gainsco is entitled to summary judgment in the form of a declaratory judgment holding that it has: 1) no duty to <u>defend or indemnify</u> against claims associated with the allegedly misappropriated $400 deposit and $75 insurance payment, 2) no duty to <u>defend or indemnify</u> against Lee's claims for conversion, 3) no duty to <u>indemnify</u> against any judgment for intentional fraud, and 3) no duty to <u>indemnify</u> against any judgment for punitive damages.

A separate, appropriate order will be entered.

DONE this 10th day of April, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE